**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| INNOVA SOLUTIONS, INC., *Plaintiff-Appellant*, | No. 19-16849 |
| v. | D.C. No. 5:17-cv-03674-VKD |
| KATHY A. BARAN, Director of California Service Center, U.S. Citizenship and Immigration Services, *Defendant-Appellee.* | OPINION |

Appeal from the United States District Court
for the Northern District of California
Virginia K. DeMarchi, Magistrate Judge, Presiding

Argued and Submitted November 20, 2020
Pasadena, California

Filed December 16, 2020

Before: Richard A. Paez and John B. Owens, Circuit
Judges, and Morrison C. England, Jr.,* Senior
District Judge.

Opinion by Judge Owens

---

* The Honorable Morrison C. England, Jr., United States Senior District Judge for the Eastern District of California, sitting by designation.

## SUMMARY**

### Immigration

The panel reversed the district court's grant of summary judgment for the U.S. Citizenship and Immigration Services (USCIS), and remanded, concluding that USCIS's denial of an H-1B temporary worker visa was arbitrary and capricious.

Innova Solutions, Inc. (Innova) wanted to hire a citizen of India with a bachelor's degree as a computer programmer and petitioned for an H-1B "specialty occupation" visa on his behalf. Under the relevant regulation, Innova had to establish that a "baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position." Although the Department of Labor's Occupational Outlook Handbook (OOH) provides that "[m]ost computer programmers have a bachelor's degree," and that a bachelor's degree is the "[t]ypical level of education that most" computer programmers need, USCIS concluded that "the OOH does not state that at least a bachelor's degree or its equivalent in a specific specialty is normally the minimum required."

The panel concluded that USCIS's denial of the H-1B visa petition was arbitrary and capricious. First, the panel explained that there is no daylight between *typically* needed, per the OOH, and *normally* required, per the regulation, and that USCIS's suggestion that there is "space" between these

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

words is so implausible that it could not be ascribed to a difference in view or the product of agency expertise. The panel also explained that the regulation is not ambiguous and deference to such an implausible interpretation is unwarranted.

Next, the panel concluded that USCIS's decision was arbitrary and capricious because it misrepresented the OOH by stating that it provides that most computer programmers have a bachelor's *or* associate's degree when, in fact, the OOH provides that most have a bachelor's degree.

Finally, the panel concluded that USCIS's decision was arbitrary and capricious because USCIS failed to consider key evidence, namely, the OOH language providing that a "bachelor's degree" is the "[t]ypical level of education that most workers need to enter this occupation."

---

## COUNSEL

David A. Wulkan (argued), Jonathan R. Sturman, and David M. Sturman, Law Office of David M. Sturman A.P.C., Encino, California, for Plaintiff-Appellant.

Elizabeth D. Kurlan (argued), Assistant United States Attorney; Sara Winslow, Chief, Civil Division; David L. Anderson, United States Attorney; United States Attorney's Office, San Francisco, California; Joseph H. Hunt, Assistant Attorney General; William C. Peachey, Director; Glenn M. Girdharry, Assistant Director; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Defendant-Appellee.

Mary Kenney (argued), Washington, D.C.; Leslie K. Dellon, Washington, D.C.; as and for Amicus Curiae American Immigration Council.

## OPINION

OWENS, Circuit Judge:

Innova Solutions, Inc. (Innova), a technology company that provides services including cloud storage and data analytics, appeals from the district court's denial of its challenge to the U.S. Citizenship and Immigration Services' (USCIS) refusal to issue an H-1B temporary worker visa. We have jurisdiction under 28 U.S.C. § 1291, and we reverse and remand.

## I.  BACKGROUND

Like many leading American technology companies, Innova needs computer programmers. Innova wanted to hire Dilip Dodda, a citizen of India with a bachelor's degree, to work as one for a three-year period.

Innova petitioned for an H-1B "specialty occupation" visa so Dodda could reside and work in the United States. *See* 8 U.S.C. § 1101(a)(15)(H)(i)(b). Under the relevant statutory and regulatory regime,[1] Innova had to establish that

---

[1] In October 2020, the Department of Homeland Security and USCIS promulgated an interim final rule that amends the regulatory criteria for qualifying as a specialty occupation. *See* Strengthening the H-1B Nonimmigrant Visa Classification Program, 85 Fed. Reg. 63,918 (Oct. 8, 2020). The new rule does not apply to pending or previously resolved visa petitions. *Id.* at 63,918, 63,924. The parties agree the amended language does not apply in this case.

the position required "theoretical and practical application of a body of highly specialized knowledge" and that "[a] baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position."[2]  *See* 8 U.S.C. § 1184(i)(1); 8 C.F.R. § 214.2(h)(4)(iii)(A)(1).

USCIS relied on the Department of Labor's Occupational Outlook Handbook (OOH) as an "authoritative source" to determine whether Dodda's position "normally" requires a bachelor's degree.[3] According to the OOH, "[m]ost computer programmers have a bachelor's degree in computer science or a related subject; however, some employers hire workers with an associate's degree."  The OOH "Quick Facts" table for computer programmers similarly provided that a bachelor's degree is the "[t]ypical level of education that most workers need to enter this occupation."

Despite the OOH's clear statements that "most" computer programmers have a bachelor's degree and that a

---

[2] The implementing regulation provides three other independently sufficient pathways for demonstrating that a position is in a "specialty occupation."  *See* 8 C.F.R. § 214.2(h)(4)(iii)(A)(2)–(4).  For example, a position also qualifies as a "specialty occupation" if the *employer* normally requires a degree for the position.  *See id.* § 214.2(h)(4)(iii)(A)(3).  Only the first criterion is at issue on appeal.

[3] The OOH provides hundreds of occupational profiles describing "the typical duties performed by the occupation" and "the typical education and training needed to enter the occupation," among other information.  U.S. Bureau of Labor Statistics, *Occupational Information Included in the OOH* (Sept. 1, 2020), https://www.bls.gov/ooh/about/occupational-information-included-in-t he-ooh.htm.  We refer throughout this opinion to the 2016–2017 version of the OOH that USCIS cited in its decision.

bachelor's degree is the "typical" level of education "need[ed]" for the position, USCIS concluded that Innova had failed to show that a computer programmer qualified as a specialty position:

> While the OOH indicates that most computer programmers obtain a degree (either a bachelor's or an associate's degree) in computer science or a related field, the OOH does not state that at least a bachelor's degree or its equivalent in a specific specialty is normally the minimum required for entry into the occupation. Further, the OOH also indicates that employers value computer programmers who have experience, which can be obtained through internships.[4]

Innova challenged USCIS's denial of the visa in district court under section 706 of the Administrative Procedure Act, contending that the decision was arbitrary and capricious. The district court rejected that argument and granted summary judgment for USCIS, concluding that "the OOH description for the Computer Programmer occupation does not describe the normal minimum educational requirements of the occupation in a categorical fashion" because "at least some Computer Programmer positions may be performed by someone with an associate's degree." Innova then appealed.

---

[4] From 2000 to 2017, USCIS followed agency guidance (referred to as the Way Memo) that "we will generally consider the position of programmer to qualify as a specialty occupation" under the first regulatory criterion. In 2017, USCIS issued guidance rescinding the Way Memo. USCIS did not explicitly rely on the rescission memo in the instant case but followed its logic.

## II. DISCUSSION

### A. Standard of Review

We review de novo a district court's ruling on cross-motions for summary judgment. *Guatay Christian Fellowship v. County of San Diego*, 670 F.3d 957, 970 (9th Cir. 2011). "This court also reviews de novo the district court's evaluations of an agency's actions." *San Luis & Delta-Mendota Water Auth. v. Locke*, 776 F.3d 971, 991 (9th Cir. 2014).

Under the Administrative Procedure Act, we must set aside agency action "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). An action is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). To survive a challenge, the agency must articulate "a satisfactory explanation" for its action, "including a rational connection between the facts found and the choice made." *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2569 (2019) (citation omitted). We may not attempt to make up for deficiencies in the decision by "supply[ing] a reasoned basis for the agency's action that the agency itself has not given." *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2127 (2016) (citation omitted).

## B. USCIS's Denial of the H-1B Visa Petition Was Arbitrary and Capricious

The OOH is the only source upon which USCIS relied to conclude that a bachelor's degree is not "normally" required for computer programming positions like Innova's. The OOH stated that "[m]ost computer programmers have a bachelor's degree in computer science or a related subject." The OOH also listed a bachelor's degree as the "[t]ypical level of education that most workers need to enter" the computer programmer occupation.

USCIS's decision in light of that evidence was arbitrary and capricious. Mirroring the regulatory language, the decision explains: "the OOH does not state that at least a bachelor's degree or its equivalent in a specific specialty is normally the minimum required for entry into the occupation." Although the OOH, a career education resource published by a different agency, did not use the precise language of the H-1B regulation, it made clear that a bachelor's degree is not only common but typically needed. There is no daylight between typically needed, per the OOH, and normally required, per the regulatory criteria. "Typically" and "normally" are synonyms. *Normally*, Merriam-Webster Thesaurus, https://www.merriam-webster.com/thesaurus/normally. The Supreme Court uses these words interchangeably in the same sentence.[5] So do

---

[5] *See, e.g.*, *Rapanos v. United States*, 547 U.S. 715, 744 (2006) ("In contrast to the pollutants *normally* covered by the permitting requirement of § 1342(a), 'dredged or fill material,' which is *typically* deposited for the sole purpose of staying put, does not *normally* wash downstream." (citation omitted) (emphases added)); *Miller v. Albright*, 523 U.S. 420, 469 (1998) (Ginsburg, J., dissenting) ("These generalizations pervade the opinion of Justice Stevens, which constantly relates and relies on

we.**⁶**  So does the United States Solicitor General.**⁷**  And so does the federal government.**⁸**

USCIS's contrary reasoning is beyond saving.  There is no "rational connection" between the only source USCIS cited, which indicated most computer programmers have a bachelor's degree and that a bachelor's degree is typically needed, and USCIS's decision that a bachelor's degree is not normally required.  *See Dep't of Com.*, 139 S. Ct. at 2569 (citation omitted); *Next Generation Tech., Inc. v. Johnson*, 328 F. Supp. 3d 252, 267 (S.D.N.Y. 2017) (noting that the court "is at a loss to see a 'rational connection'" in the same context).  USCIS's suggestion that there is "space" (which we understand to connote a difference in meaning) between these words is "so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Defs. of Wildlife*, 551 U.S. at 658 (citation omitted).  While it is theoretically possible that there is "space" between

what '*typically*,' or '*normally*,' or 'probably' happens 'often.'" (emphases added)).

**⁶** *See, e.g.*, *United States v. Sierra Pac. Indus., Inc.*, 862 F.3d 1157, 1168 (9th Cir. 2017) ("[M]ere nondisclosure of evidence is *typically* not enough to constitute fraud on the court, and perjury by a party or witness, by itself, is not *normally* fraud on the court." (internal quotation marks and citation omitted) (emphases added)); *United States v. Flores-Blanco*, 623 F.3d 912, 915 (9th Cir. 2010).

**⁷** *See* Brief for the United States at 3, *Boyle v. United States*, 556 U.S. 938 (2009) (No. 07-1309) ("After scouting for banks likely to have vulnerable and cash-rich night-deposit boxes, *typically* located in retail areas, like shopping malls, the group would *normally* execute robberies in the early morning hours." (internal citations omitted) (emphases added)).

**⁸** *See, e.g.*, 30 C.F.R. § 580.30; 33 C.F.R. § 203.71; 40 C.F.R. § 98.128; 45 C.F.R. § 1801.4.

normally, most, and typically, that space is at best molecular, and nowhere near big enough for the doublespeak freight train that USCIS tries to drive through it.

In response, USCIS points to OOH language stating that "some employers hire workers with an associate's degree." But the fact that *some* computer programmers are hired without a bachelor's degree is entirely consistent with a bachelor's degree "*normally* [being] the minimum requirement for entry." 8 C.F.R. § 214.2(h)(4)(iii)(A)(1) (emphasis added); *see also Taylor Made Software, Inc. v. Cuccinelli*, 453 F. Supp. 3d 237, 246 (D.D.C. 2020) ("[USCIS] cannot simply rely on the OOH's recognition that an unspecified number of contrary cases exist. That is not a rational treatment of the language in the OOH.") Normally does not mean always.**[9]** *See Normally*, Cambridge Dictionary (2019), https://dictionary.cambridge.org/us/dict ionary/english/normally (defining "normally" as "usually or regularly" and "usually, or in *most* cases" (emphasis added)); *see also United States v. Corey*, 232 F.3d 1166, 1180 (9th Cir. 2000) (distinguishing "normally" from "always"); *Riverbend Farms, Inc. v. Madigan*, 958 F.2d 1479, 1488 (9th Cir. 1992) (same); 5 C.F.R. § 551.202(h) (same). While agencies are entitled to deference in interpreting their own ambiguous regulations, this regulation is not ambiguous and deference to such an implausible interpretation is unwarranted. *See Kisor v. Wilkie*, 139 S. Ct. 2400, 2414 (2019) (limiting *Auer* deference to regulations

---

**[9]** That USCIS recently issued an interim final rule amending this regulation to delete the word "normally" from the first criterion so that that a bachelor's degree is "always the requirement" for the occupation confirms this common sense reading of the prior regulatory language. *See* 85 Fed. Reg. at 63,926. As discussed above, this amendment does not impact the instant appeal.

that are "genuinely ambiguous, even after a court has resolved to all the standard tools of interpretation"); *Mejia v. Ashcroft*, 298 F.3d 873, 878 (9th Cir. 2002) (noting that an agency "does not have the discretion to misapply the law."). USCIS's unreasonable reading of the regulatory language here is therefore arbitrary and capricious. *See Salehpour v. INS*, 761 F.2d 1442, 1447 (9th Cir. 1985) ("Where the objective criteria of a regulation are clearly met, there is no room for an agency to interpret a regulation so as to add another requirement.").

On appeal, USCIS tries to distance itself from the "authoritative source" upon which it chose to rely exclusively in its decision. USCIS contends that the OOH alone cannot establish "whether an occupation qualifies *per se* as a specialty occupation" because "[i]n some instances, as with the Computer Programmer occupation here, it is not a sufficient source of information." In other words, where the OOH states that some positions do not require a bachelor's degree, USCIS does not consider the OOH a "sufficient source of information." That argument is related to the basis for the district court's decision: because some computer programmers are hired with associate's degrees, Innova "had the burden to show that the particular position offered to Mr. Dodda was among the Computer Programmer positions for which a bachelor's degree was normally required."

These arguments are flawed. First, by demanding additional proof anytime *some* positions within an occupation require less than a bachelor's degree, USCIS again improperly equates "normally" with "always." These contentions also misconstrue the regulation and flout USCIS's own approach to applying it. While it is true that the regulation refers to the requirement of a bachelor's

degree "for entry into the *particular position*," 8 C.F.R. § 214.2(h)(4)(iii)(A)(1) (emphasis added), USCIS determined that Dodda's "particular position" is indeed computer programmer, and not a sub-group within that classification. As USCIS told the district court, this is the first of two steps in USCIS's analysis of the first regulatory criterion.

Second, "the agency *categorically* determines whether the educational requirements of that occupation group in the OOH normally requires for entry at least a bachelor's degree in a specific specialty." Therefore, by USCIS's own admission, showing that the matching occupational group in the OOH normally requires a bachelor's degree satisfies the regulation. No additional proof about whether the position falls within some sub-group is required. By requiring Innova to show its "particular position . . . was among the Computer Programmer positions for which a bachelor's degree was normally required," the district court's ruling functionally requires visa petitioners to demonstrate that their particular position *actually* requires a bachelor's degree. That approach is plainly inconsistent with the language of the first regulatory criterion and USCIS practice. Moreover, it conflates the first criterion, which only asks whether the *position* normally requires a bachelor's degree, and the third criterion, which asks whether the *employer* normally requires a bachelor's degree for the position. *Compare* 8 C.F.R. § 214.2(h)(4)(iii)(A)(1), *with id.* § 214.2(h)(4)(iii)(A)(3). And as both parties acknowledge, the four criteria are independent—a petitioner need only satisfy any one criterion to establish that a position is in a "specialty occupation." *Id.* § 214.2(h)(4)(iii)(A).

USCIS's decision was also arbitrary and capricious because in misrepresenting the OOH, it "offered an

explanation for its decision that [ran] counter to the evidence before [it]." *Defs. of Wildlife*, 551 U.S. at 658 (citation omitted). We have required agency decisions to accurately reflect the evidentiary record. *See Cerrillo-Perez v. INS*, 809 F.2d 1419, 1422 (9th Cir. 1987) ("[W]hen important aspects of the individual claim are distorted or disregarded, the BIA has abused its discretion." (internal quotation marks and citation omitted)).

According to the USCIS decision, the OOH stated that "the [computer programmer] occupation allows for a wide range of educational credentials, including an associate's degree to qualify." But rather than suggesting a "wide range," the OOH stated: "Most computer programmers have a bachelor's degree in computer science or a related subject; however, some employers hire workers with an associate's degree." The USCIS decision continues: "the OOH indicates that most computer programmers obtain a degree (either a bachelor's or an associate's degree) in computer science or a related field." But as the district court acknowledged, that "mischaracterizes the OOH." The OOH did not state that most computer programmers have *either* a bachelor's or an associate's degree, but rather that most "have a bachelor's degree in computer science or a related subject."

While a factual error is not necessarily fatal to an agency decision, whether most programmers have a bachelor's (as opposed to either a bachelor's or associate's) degree is the core question upon which USCIS's determination here hinged. Because we may only affirm on the basis provided by the agency, *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), and in any case, the agency has not disavowed this view, this serious misconstruction of the only source considered was arbitrary and capricious.

Finally, USCIS failed to consider key evidence. A decision is arbitrary and capricious if the agency "entirely failed to consider an important aspect of the problem." *Defs. of Wildlife*, 551 U.S. at 658 (citation omitted). "We will defer to an agency's decision only if it is 'fully informed and well-considered.'" *Sierra Club v. Bosworth*, 510 F.3d 1016, 1023 (9th Cir. 2007) (citation omitted). The OOH listed "bachelor's degree" as the "[t]ypical level of education that most workers need to enter this occupation." That language speaks directly to the question whether a bachelor's degree is normally required for computer programmers. Indeed, it preempts USCIS's core argument on appeal: that "there is a difference between workers in a particular occupation 'having' a degree and what the industry (including other employers) normally 'requires,'" and that the OOH only establishes the former. Despite appearing at the top of the OOH's landing page for computer programmers, this OOH language was not mentioned anywhere in USCIS's decision. USCIS's failure to consider evidence so central to the inquiry is yet another (and independent) reason why its decision was arbitrary and capricious, and why we must reverse.

**REVERSED AND REMANDED.**